UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| METROPOLIS SPECIAL POLICE DEPARTMENT, | |
| Plaintiff, | Civil Action No. 21-cv-2171 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| D.A.T.A. MANAGEMENT CONSULTING, LLC, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiff Metropolis Special Police Department ("MSPD") seeks a default judgment, pursuant to Federal Rule of Civil Procedure 55(b), and monetary and injunctive relief in the instant action, alleging that defendants D.A.T.A. Management Consulting, LLC ("DMC") and Gold Shield Security Consultants, Inc. ("Gold Shield"), engaged in violations of the Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. §§ 101 *et seq.*, section 43(a) of the Trademark Act of 1946 ("Lanham Act"), as amended, 15 U.S.C. § 1125(a), and unfair competition in violation of D.C. common law, by using plaintiff's 2-D artwork logo (the "Artwork Logo") on defendants' website and uniforms of defendants' private security officers.  Compl. ¶¶ 1–5, 21, ECF No. 1; Pl.'s Mot. Default J. ("Pl.'s Mot.") at 1, ECF No. 11.  No attorney has entered an appearance on defendants' behalf, filed any response to the Complaint, nor moved to set aside the entry of default against each defendant.  *See* Clerk's Entry Default, ECF No. 9; Clerk's Entry Default, ECF No. 10.

For the reasons set forth below, default judgment is granted as to all three counts of the Complaint and plaintiff's request for a permanent injunction is granted.  In addition, plaintiff's requests for statutory damages and for attorney's fees will be granted, but in amounts that are

1

supported by appropriate documentation or other evidence, which has not, to date, been submitted.

## I. BACKGROUND

The relevant factual background, as set out in the Complaint, and procedural history is summarized below.

### A. Factual Background

Plaintiff, a limited liability company with its principal place of business in Washington, D.C., "provides police, security, and protective services to its customers in the Washington metropolitan area." Compl. ¶¶ 8, 15. In May 2017, plaintiff created and published the Artwork Logo and began using and promoting it extensively in connection with its police, security, and protective services. *Id.* ¶¶ 3, 16–18. In tandem, plaintiff "has expended significant time and resources, and developed considerable and valuable goodwill with respect to the Artwork Logo." *Id.* ¶ 20. DMC is a limited liability company with its principal place of business in Maryland. *Id.* ¶ 9. Gold Shield is a company with its principal place of business in Washington, D.C. *Id.* ¶ 10. Defendants also provide security services in the Washington metropolitan area, and "directly target[] consumers in the District of Columbia by operating a branch that offers security services to residents of the District of Columbia." *Id.* ¶¶ 5, 13. Since 2018, defendants have used, without plaintiff's approval, a nearly identical version of the Artwork Logo online and on their officers' uniforms. *Id.* ¶¶ 21–24.

In January 2019, plaintiff registered the Artwork Logo with the U.S. Copyright Office. *Id.* ¶ 17; Compl. Ex. A, ECF No.1-1. Shortly after receiving a registration certificate for the Artwork Logo, plaintiff sent a cease-and-desist letter to defendants, informing them that they were using a substantially similar logo and demanding that they cease using the Artwork Logo online. Compl. ¶¶ 27–28; Compl. Ex. B, ECF No. 1-2. Defendants notified plaintiff that they

would comply with the demands and subsequently changed their logo online. Compl. ¶ 29. Defendants, however, resumed using a substantially similar version of the Artwork Logo sometime around October 2020, including by placing the logo on their employees' uniforms. *Id.* ¶ 30. Plaintiff again sent another cease-and-desist letter to defendants to no avail. *Id.* ¶¶ 31–33; Compl. Ex. C, ECF No. 1-3. Defendants continued to use the Artwork Logo, including by having their security officers "wear[] a security patch almost identical to the one used by [plaintiff]," even as recently as March 2021. Compl. ¶ 33; Compl. Ex. D, EFC No. 1-4.

### B.  Procedural Background

On August 13, 2021, plaintiff initiated this litigation, alleging copyright infringement under the Copyright Act, 17 U.S.C. §§ 501 *et seq.*, Compl. ¶¶ 34–44 (Count One); trademark infringement through false designation of origin and false representation under the Lanham Act, 15 U.SC. § 1125(a), *id.* ¶¶ 45–49 (Count 2); and unfair competition, *id.* ¶¶ 50–52 (Count Three). Plaintiff seeks a permanent injunction of defendants' infringements and unfair competition, a declaratory judgment that defendants have infringed its trademark and copyrighted Artwork Logo and engaged in unfair competition, damages, and attorney's fees. *Id.* at 9–11; Pl.'s Mem. Supp. Mot. Default J. ("Pl.'s Mem.") at 11–13, ECF No. 11-1.

Defendants were served on August 28, 2021, Return Service/Aff., ECF No. 6, and September 10, 2021, Return Service/Aff., ECF No. 5. Neither defendant timely answered. *See* Fed. R. Civ. P. 12(a)(1)(A)(i) ("A defendant must serve an answer . . . within 21 days after being served with the summons and complaint[.]"). Plaintiff then moved for an entry of default for both defendants, Aff. Default, ECF No. 7; Aff. Default, ECF No. 8, which the Clerk of the Court entered against both defendants on October 6, 2021, Clerk's Entry Default, ECF No. 9; Clerk's Entry Default, ECF No. 10. Plaintiff thereafter filed the pending motion for default judgment.

Defendants have filed no response to this motion nor made any other filing in connection with this case.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure "provide for default judgments . . . [to] safeguard plaintiffs 'when the adversary process has been halted because of an essentially unresponsive party,'" and to protect "'the diligent party . . . lest he be faced with interminable delay and continued uncertainty as to his rights.'"  *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).  Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a); *see* 10A Charles Alan Wright, *et al.*, Federal Practice and Procedure § 2682 (4th ed. 2021) ("When the prerequisites of Rule 55(a) are satisfied, an entry of default may be made by the clerk without any action being taken by the court . . . [as long as] the clerk [has] examine[d] the affidavits filed and [found] that they meet the requirements of Rule 55(a).").

Upon entry of default, "[a]n allegation—other than one relating to the amount of damages—is admitted."  Fed. R. Civ. P. 8(b)(6); *see also Cross v. Equityexperts.org, LLC*, No. 19-14067, 2021 U.S. App. LEXIS 33623, at *2 n.1 (11th Cir. Nov. 12, 2021) ("[A] defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." (internal quotations omitted) (quoting *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005))); *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 961 F.3d 942, 948 (7th Cir. 2020) ("When a court enters a default judgment as to liability, it must accept as true all

factual allegations in the complaint, except those regarding the amount of damages."); *Polidoro v. Saluti*, 675 F. App'x 189, 190 (3d Cir. 2017) ("In considering a motion for a default judgment under Rule 55(b)(2), a district court should accept as true the well-pleaded factual allegations of the complaint, but the court need not accept the moving party's legal conclusions or allegations relating to the amount of damages.  Rather, the plaintiff must prove that he is entitled to the damages sought." (internal citations omitted)).

Default judgment may be entered upon application for such relief, *see* Fed. R. Civ. P. 55(b)(2), but "is not automatic," *Mwani*, 417 F.3d at 6.  The procedural posture of a default does not relieve a federal court of its obligation to "satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." *Id*.  A plaintiff seeking a default judgment bears the burden of making a *prima facie* showing that personal jurisdiction may be exercised over the absent defendant. *Id.* at 6–7.  If personal jurisdiction over the absent defendant is present, whether to grant a motion for default judgment against that defendant is in the court's discretion. *See Jackson*, 636 F.2d at 835.

### III.   DISCUSSION

The propriety of a default judgment and award of remedies against defendants is considered, following determination of whether personal jurisdiction may be exercised over DMC, which, as alleged in the Complaint, is not incorporated in the District of Columbia nor has its principal place of business here.[1]

---

[1] Plaintiff correctly contends that subject-matter jurisdiction over this action is established, pursuant to 28 U.S.C. § 1338(a)–(b), because plaintiff's copyright- and trademark-infringement claims arise under acts of Congress relating to copyrights and trademarks and plaintiff's unfair competition claim is joined with substantial and related claims under copyright and trademark laws.  Pl.'s Mem. at 3–4.  Furthermore, personal jurisdiction may be exercised as to Gold Shield, which is an organization incorporated under the laws of the District of Columbia with its principal place of business in the District.  *See* Compl. ¶ 10; D.C. Code § 13–422; *Richard v. Bell Atl. Corp.*, 946 F. Supp. 54, 68 (D.D.C. 1996) ("[T]he Court may have general personal jurisdiction because [the defendant] is . . . organized under the laws of, or maintain[s] its principal place of business in the District[.]").

5

### A. Personal Jurisdiction

For all three claims, this Court may exercise personal jurisdiction over a non-resident defendant only if a plaintiff shows that the D.C. long-arm statute is satisfied. *See AF Holdings, Inc. v. Does 1-1058*, 752 F.3d 990, 996 (D.C. Cir. 2014) (applying D.C. long-arm statute in copyright-infringement case); *Safex Found., Inc. v. Safeth, Ltd.*, No. 21-CV-161 (BAH), 2021 U.S. Dist. LEXIS 90417, *13–14 (D.D.C. May 12, 2021) (applying D.C. long-arm statute in trademark-infringement case); *see also U.S. v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995) ("A personal jurisdiction analysis requires that a court determine whether jurisdiction over a party is proper under the applicable local long-arm statute and whether it accords with the demands of due process."). Plaintiff's copyright- and trademark-infringement claims and unfair competition claim are premised on the allegation that defendants copied and used plaintiff's trademark, the Artwork Logo, online and in connection with their provision of security services in the Washington metropolitan area, including in Washington, D.C., where plaintiff has its principal place of business. Compl. ¶¶ 3–5, 8–10, 13, 21. Subsection (a)(1) of the District of Columbia's long-arm statute confers personal jurisdiction over any person "as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1); *see also Forras v. Rauf*, 812 F.3d 1102, 1106 (D.C. Cir. 2016) (noting that § 13-423(a)(1) "has been held 'to be coextensive (for cases that fit within its description) with the Constitution's due process limit'" (quoting *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987))). Thus, two requirements must be satisfied for a claim against a defendant to fall within subsection (a)(1) of the District of Columbia's long-arm statute: (1) the defendant must have conducted business in the District of Columbia, and (2) plaintiff's claim against the defendant must arise from that business. *See Forras*, 812 F.3d at 1106.

Plaintiff's claims satisfy both requirements. First, DMC's operation of a branch offering security services to residents of the District and provision of security services to D.C. residents meets the low threshold for "transacting *any* business." D.C. Code § 13-423(a)(1) (emphasis added); *see Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 270–71 (D.C. 2001) ("[T]o satisfy the due process requirements associated with . . . section 13–423(a)(1), the plaintiff must show that the defendant has purposefully engaged in some type of commercial or business-related activity directed at District residents."); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) ("[A] forum legitimately may exercise personal jurisdiction over a nonresident who 'purposefully directs' his activities toward forum residents."). Second, plaintiff's claims against DMC clearly arise from that business as plaintiff alleges that DMC's infringing use of plaintiff's Artwork Logo occurred during its targeting of and provision of security services to D.C. residents, in direct competition with plaintiff's own private security services. Compl. ¶¶ 3, 5, 13, 21, 25–26. Accordingly, plaintiff's copyright- and trademark-infringement claims and unfair competition claim against DMC satisfy subsection (a)(1) of D.C.'s long-arm statute. Thus, the Court may exercise personal jurisdiction over DMC.[2]

### B.   Default Judgment

Upon determining that both subject matter and personal jurisdiction requirements are satisfied as to a defaulting defendant, the entry of default judgment is appropriate when the defendant fails "to respond to the summons and complaint, the entry of default, or the motion for default judgment." *Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 150 (D.D.C.

---

[2] Plaintiff also contends that personal jurisdiction may be exercised over DMC under D.C. Code § 13-423(a)(3) because plaintiff's claims arise from DMC "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." D.C. Code § 13-423(a)(3); *see* Compl. ¶ 13; Pl.'s Mem. at 4–5. Since personal jurisdiction over DMC has already been determined to be proper under § 13-423(a)(1), this other basis for the exercise of personal jurisdiction need not be addressed.

2011) (citing *Gutierrez v. Berg Contracting Inc.*, No. 99–3044, 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000)).  Given defendants' failure to respond to the summons and complaint and "the absence of any request to set aside the default or suggestion by the defendant[s] that [they] ha[ve] a meritorious defense," the Court concludes that entry of default judgment is appropriate in this case.  *Gutierrez*, 2000 WL 331721, at *1.  As discussed more fully below, plaintiff has presented satisfactory evidence to establish defendants' liability under the claims asserted and entitlement to the relief requested.

### 1.     Count I: Copyright Infringement

Plaintiff has provided sufficient evidence to show defendants are liable for copyright infringement.  To prevail on a copyright-infringement claim, a plaintiff "must prove both ownership of a valid copyright and that the defendant copied original or 'protectible' aspects of the copyrighted work."  *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295 (D.C. Cir. 2002) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991)).  Plaintiff's certificate of registration from the U.S. Copyright Office for the Artwork Logo "constitute[s] prima facie evidence of the validity of the copyright," satisfying the first element of its claim.  17 U.S.C. § 410(c); *see* Compl. Ex. A.

The factual allegations set out in the Complaint are assumed to be true and easily satisfy the second element.  Plaintiff has shown that defendants copied the Artwork Logo almost exactly, down to its shape, colors, and designs.  Compl. ¶¶ 22–24.  The only difference is that defendants substituted Gold Shield's name on the logo in lieu of plaintiff's name.  Compl. ¶¶ 23–24.  This nearly verbatim copying establishes infringement of plaintiff's copyright.  *See Bucklew v. Hawkins, Ash, Baptie & Co.*, 329 F.3d 923, 926 (7th Cir. 2003) ("[W]hen the similarities concern details of such an arbitrary character that the probability that the infringer had duplicated

8

them independently is remote, an inference of copying may be drawn without any additional evidence."); *id.* (collecting cases); *Batiste v. Lewis*, 976 F.3d 493, 502 (5th Cir. 2020) ("[A] plaintiff may raise an inference of factual copying without any proof of access if the works are 'strikingly similar.'" (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 113 (5th Cir. 1978))); *Parker v. Winwood*, 938 F.3d 833, 836 (6th Cir. 2019) (same); *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007) (same); *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 941 n.1 (8th Cir. 1992) (same).  Accordingly, plaintiff's motion for default judgment as to its copyright-infringement claim is granted.

### 2. Counts II–III: False Designation of Origin & Unfair Competition

To succeed on its trademark and unfair competition claims, plaintiff must show that (1) it owns a valid trademark; (2) its trademark is distinctive or has acquired a secondary meaning; and (3) there is a substantial likelihood of confusion between the plaintiff's mark and the alleged infringer's mark.  *See Am. Soc'y for Testing & Materials v. Public.Resource.Org., Inc.*, 896 F.3d 437, 455–56 (D.C. Cir. 2018); *Globalaw Ltd. v. Carmon & Carmon L. Off.*, 452 F. Supp. 2d 1, 26 (D.D.C. 2006) (collecting cases holding that the elements for trademark infringement, false designation of origin, and unfair competition are essentially the same).

Plaintiff's allegations sufficiently establish all three elements.  Plaintiff began using the Artwork Logo to promote, identify, and distinguish its security services as early as May 2017, almost a year before defendants began using the logo. Compl. ¶¶ 3, 18–19, 21; *see Safex Found., Inc. v. Safeth, Ltd.*, 531 F. Supp. 3d 285, 298 (D.D.C. 2021) ("[T]o show ownership of trademark, plaintiff[] must show that [it] w[as] the first to use the mark in commerce."); 15 U.S.C. § 1127 (defining "use in commerce").  The overall appearance of the Artwork Logo, with its bright coloring, intricate images, and interplay of shapes, creates a distinctive visual

impression, and the dominant features of the logo, such as the dome of the Capitol Building and the leaves surrounding the dome, are either arbitrary, having "no intrinsic connection" to plaintiff's services, or merely suggestive of the security services plaintiff offers. *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1040 (D.C. Cir. 1989) (holding marks composed of "suggestive" or "arbitrary" terms "are inherently distinctive"); *see also All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 509–10 (5th Cir. 2018) (noting that courts should "give more weight to the distinctive portions of a mark and less weight to unremarkable or generic portions" (quoting *Xtreme Lashes v. Xtended Beauty*, 576 F.3d 221, 227 (5th Cir. 2009))). Finally, plaintiff has sufficiently alleged a substantial likelihood of confusion given that the defendants are using a nearly identical mark to sell substantially similar services. *See Safex*, 531 F. Supp. 3d at 299–300. Thus, plaintiff's motion for default judgment as to its trademark and unfair competition claims is granted.

### C. Remedies

Plaintiff seeks injunctive relief as well as statutory damages and attorney's fees. Pl.'s Mem. at 11–13. "A defaulting defendant concedes all well-pleaded factual allegations as to liability," but a court may require additional evidence regarding the appropriate remedies. *Al-Quraan v. 4115 8th St. NW, LLC*, 123 F. Supp. 3d 1, 1 (D.D.C. 2015); *see also SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975) (requiring district court to "make an independent determination" before granting an injunction, "which is appropriately entered only after the exercise of a court's discretion, and upon a finding of the likelihood that the defendant would commit future violations if not enjoined"); *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 12 (D.D.C. 2013) ("Although default judgment establishes the defaulting party's liability for every well-pleaded allegation in the complaint, it does not automatically establish liability in the amount claimed by the plaintiff."). "[U]nless the amount of damages is certain, the court is

required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (entering default judgment for an arbitration award under Federal Rule of Civil Procedure 55(b)(1)). "[T]he court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002); *see also United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (holding a default judgment awarding statutory damages for copyright infringements requires "a hearing or a demonstration by detailed affidavits establishing the necessary facts" because such damages are "not liquidated or capable of mathematical calculation"). As explained below, plaintiff has sufficiently demonstrated entitlement to the relief requested, but the Court requires plaintiff to submit additional information before a default judgment for statutory damages and attorney's fees may be entered.

    **1. Permanent Injunction**

Both the Copyright Act and the Lanham Act authorize the Court to grant injunctive relief to prevent infringement of a copyright or trademark. 17 U.S.C. § 502(a) (authorizing a court in a copyright-infringement suit to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright"); 15 U.S.C. § 1116 (authorizing a court in a trademark-infringement suit "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable"). Courts in the D.C. Circuit have long held that when a plaintiff has established liability as well as a threat of continuing infringement, the plaintiff "is *entitled* to an injunction." *Walt Disney Co. v. Powell*, 897 F.2d 565, 567–68 (D.C. Cir. 1990) (emphasis in original) (applying this principle to

copyright infringement); *Hanley-Wood*, 783 F. Supp. 2d at 151 (applying this principle to trademark infringement).

Plaintiff has shown such entitlement.  Defendants have continued to infringe on plaintiff's trademark and copyright despite two demands to cease and desist.  Compl. ¶¶ 27–33.  Defendants' continuous willful disregard for plaintiff's copyright and trademark demonstrates that they likely will continue to infringe on plaintiff's rights absent an injunction.  *See Hanley-Wood*, 783 F. Supp. 2d at 151; *Harrison Music Corp. v. Tesfaye*, 293 F. Supp. 2d 80, 83 (D.D.C. 2003).  Thus, because defendants' actions constitute a willful disregard for plaintiff's rights and because the requested relief directly addresses the harm caused, the Court finds that plaintiff's request for injunctive relief is reasonable, and plaintiff's requested permanent injunction enjoining defendants from further trademark- and copyright-infringement activities will be entered.  *See* Pl.'s Proposed Order at 1–2, ECF No. 11-2.

### 2. Statutory Damages

Plaintiff also requests the maximum amount of statutory damages, *i.e.,* $30,000, for the copyright-infringement claim pursuant to 17 U.S.C. § 504(c)(1).  Pl.'s Mem. at 12–13.  Under § 504(c)(1) "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1).  The Copyright Act's statutory damages can be imposed for more than just the purposes of compensation or restitution; they can also be imposed as means of deterrence.  *See Harrison*, 293 F. Supp. 2d at 83–84.  "In deciding what amount of statutory damages to award, a

court should consider the expenses saved and profits reaped by defendant in connection with the infringements, revenues lost by plaintiffs as a result of defendant's conduct, and whether the infringer[']s state of mind was willful, knowing, or innocent." *Id.* at 83.  A defendant willfully infringes when "he has actual knowledge of his infringement or if he recklessly disregards the possibility of infringing a copyright." *Id.* at 84.  Plaintiff requests the maximum amount of statutory damages but has not provided the Court with any evidence concerning the aforementioned factors or argument to substantiate why $30,000 would be a "just" damages award.  Accordingly, plaintiff is directed to submit affidavits and other relevant documentation supporting its request for damages by no later than thirty days from the date of this opinion and its contemporaneously issued order.

### 3. Attorney's Fees

Plaintiff also seeks to recover $20,000 in attorney's fees for its copyright and trademark claims.  Pl.'s Mem. at 13; Pl.'s Proposed Order at 3.  Under the Copyright Act, the Court has the discretion to award full costs and reasonable attorney's fees to the prevailing party.  17 U.S.C. § 505.  Plaintiff qualifies as "the prevailing party" here.  *See Serrano v. Chicken-Out, Inc.*, 209 F. Supp. 3d 179, 194 (D.D.C. 2016).  The Supreme Court has issued "no precise rule or formula" to guide courts in exercising their discretion to award attorney's fees under § 505, *Fogerty v. Fantasy Inc.*, 510 U.S. 517, 534 (1994) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983), but has identified "'several nonexclusive factors' to inform a court's fee-shifting decisions: 'frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence,'" *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (alteration in original) (quoting *Fogerty*, 510 U.S. at 534, n.19).  "Although objective reasonableness carries significant weight, courts must view

all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Id.* at 209.

Here, several factors weigh in favor of awarding plaintiff reasonable attorney's fees for its copyright-infringement claim. Plaintiff's claim is objectively reasonable. Defendants repeatedly used the Artwork Logo without permission even after plaintiff sent two cease-and-desist letters, which included a copy of plaintiff's valid copyright registration for the Artwork Logo. Defendants' knowing and repeated copyright infringement, coupled with its failure to answer in this case, warrant an award of fees to compensate plaintiff for bringing and maintaining a suit to protect its substantive rights and creative work and to deter future infringement. *See id.* at 205, 209.

The Lanham Act also provides courts discretion to "award reasonable attorney fees to the prevailing party" in trademark-infringement cases but only in "exceptional cases." 15 U.S.C. §1117(a). When the plaintiff is the prevailing party, the D.C. Circuit has construed the "exceptional cases" standard to require a court to "find willful or bad faith infringement by the defendant in order to award attorney's fees to the plaintiff." *Reader's Dig. Ass'n, Inc. v. Conservative Dig., Inc.*, 821 F.2d 800, 808 (D.C. Cir. 1987), *overruled on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

Recent Supreme Court and D.C. Circuit cases, however, call into question whether this interpretation of the "exceptional cases" standard remains viable. In *Octane Fitness, LLC v. ICON Health and Fitness, Inc.*, the Supreme Court, in interpreting the attorney's fees provision in the Patent Act, which is identical to § 1117(a), held "that an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in

which the case was litigated." 572 U.S. 545, 554 (2014).  Notably, the Court did not require different findings for different prevailing parties or a finding of willfulness or bad faith, but instead instructed district courts to "determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of circumstances" and the considerations previously identified in *Fogerty*.  *Id.* (citing *Fogerty*, 510 U.S. at 534, n.19).  As noted, because the language in § 1117(a) is identical to the language interpreted by the Supreme Court in *Octane Fitness*, every federal appellate court to consider the question has since held that the *Octane Fitness* standard applies to requests for attorney's fees under the Lanham Act.  *See Yah Kai World Wide Enterprises, Inc. v. Napper*, 292 F. Supp. 3d 337, 366 (D.D.C. 2018) (collecting cases).

      The D.C. Circuit also appears to have concluded that the *Octane Fitness* standard is applicable to district courts considering requests for attorney's fees under 15 U.S.C. §1117(a).  In *Xereas v. Heiss*, the D.C. Circuit highlighted the Supreme Court's interpretation of an identical provision to § 1117(a) under the Patent Act in *Octane Fitness* and held that, like the Patent Act's provision, the Lanham Act's fee-shifting provision in § 1117(a) places the determination of whether a case is exceptional under the discretion of the district court.  987 F.3d 1124, 1136–37 (D.C. Cir. 2021).  Consistent with *Octane Fitness*, the D.C. Circuit explained that, under § 1117(a) "district courts 'may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.'"  *Id.* at 1137.  Without expressly abrogating the D.C. Circuit's prior caselaw requiring a finding of willfulness or bad faith to award attorney's fees to a prevailing plaintiff under §1117(a), the Court's decision in *Xereas* strongly suggests this finding may simply no longer be required.

15

Regardless of whether *Octane Fitness* and *Xereas* spell the end to the D.C. Circuit's willfulness/bad faith requirement, plaintiff is entitled to attorney's fees. Willfulness or bad faith in a trademark-infringement case "means passing off a product or service as another seller's better-established one, or some other deliberate theft of a mark holder's good will—in sum, conduct aimed at a victim targeted by the defendant." *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 966 (D.C. Cir. 1990). Defendants' willfulness is apparent: despite being warned twice, defendants repeatedly used plaintiff's Artwork Logo on their website and in the course of providing similar services as plaintiff, copying every last detail of plaintiff's logo except for the company name. Additionally, the repeated and deliberate use of the Artwork Logo, including after two cease-and-desist letters, sets the substantive strength of plaintiff's litigating position far apart from run-of-the-mill trademark-infringements cases. In short, whether the *Octane Fitness* standard or the willfulness standard governs, plaintiff has sufficiently established the appropriateness of an award for attorney's fees for its trademark-infringement claim.

Having found that plaintiff is entitled to attorney's fees for both claims, the Court directs plaintiff to submit additional information to support its request for $20,000 in attorney's fees. *See Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) ("The 'fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates.'" (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1107–08 (D.C. Cir. 1995))). Plaintiff will have thirty days from the date of this opinion and its contemporaneously issued order to submit the necessary materials in support of its request for attorney's fees.

## IV.     CONCLUSION

For the foregoing reasons, plaintiff's motion for default judgment is granted. Accordingly, a permanent injunction will be entered against defendants enjoining them from infringing on plaintiff's copyright and trademark. The Court will award plaintiff statutory damages and attorney's fees in an amount to be determined after plaintiff submits the requested additional evidence.

An Order consistent with this Memorandum Opinion will issue contemporaneously.

Date:  January 6, 2022

                                                                            _____
                                                                            BERYL A. HOWELL
                                                                            Chief Judge